1

2

3

4

5

6

7

8                        **UNITED STATES DISTRICT COURT**

9                        **EASTERN DISTRICT OF CALIFORNIA**

10

11   JORGE MEDRANO, et al.,                )   Case No.: 1:12-cv-00564 JLT
                                           )
12                  Plaintiffs,            )   ORDER DENYING PLAINTIFF'S MOTION TO
                                           )   COMPEL DISCOVERY
13          v.                             )
                                           )
14   KERN COUNTY SHERIFF'S OFFICER,  et    )   (Doc. 39)
     al.,                                  )
15                                         )
                    Defendants.            )
16   _____       )

17          Plaintiffs are the brothers of Rodolfo Medrano who was shot to death on May 29, 2011 by

18   officers of the Kern County Sheriff's Office.  (Doc. 21 at 2-3, 4)  In their current motion, Plaintiffs seek

19   to compel the depositions of the four officers who shot at the decedent.  Plaintiffs argue that because

20   counsel for Defendants failed to identify the shooters in a timely fashion they were not able to timely

21   issue deposition notices to these individuals.

22          Defendants argue that the full and complete police reports were provided in September 2013

23   and that these reports identified the shooters.  Despite this Plaintiffs never noticed any depositions and

24   now the discovery period has lapsed.

25          For the reasons set forth below, the motion is **DENIED**.

26   **I.     Factual and Procedural History**

27          In the first amended complaint, Plaintiffs allege their brother, Rodolfo Medrano, encountered

28   Sheriff's officers on May 29, 2011.  (Doc. 21 at 2-3)  During this encounter, Plaintiffs allege that

                                               1

though their brother took no action to justify the use of force, the officers shot and killed him.  Id. at 3.

Plaintiffs proceed in this litigation only against the public entity only and, though Doe Defendants are

named, no individual officer is named as a Defendant.[1]

On March 13, 2013, the Court held a scheduling conference and issued an order setting forth

the applicable case-related deadlines therein.  (Docs. 25, 27)  In particular, the Court ordered that all

non-expert discovery be completed no later than February 28, 2014.  (Doc. 27 at 3)  Notably, this is

the deadline requested by counsel in their joint scheduling conference statement.  (Doc. 24 at 10)  The

scheduling order also read,

> The foregoing order represents the best estimate of the court and counsel as to
> the agenda most suitable to dispose of this case. The trial date reserved is specifically
> reserved for this case. If the parties determine at any time that the schedule outlined in
> this order cannot be met, counsel are ordered to notify the court immediately of that
> fact so that adjustments may be made, either by stipulation or by subsequent status
> conference.
> **The dates set in this Order are considered to be firm and will not be
> modified absent a showing of good cause even if the request to modify is made by
> stipulation. Stipulations extending the deadlines contained herein will not be
> considered unless they are accompanied by affidavits or declarations, and where
> appropriate attached exhibits, which establish good cause for granting the relief
> requested.**
> Failure to comply with this order may result in the imposition of sanctions.

(Doc. 27 at 9, emphasis in the original)

On September 23, 2013, counsel filed their joint mid-discovery status report.  (Doc. 31)

Plaintiffs' counsel reported they had propounded written discovery and that they "Intend to complete

all necessary discovery by the date in the Scheduling Order." Id. at 2.  Notably, counsel reported no

existing discovery disputes and described that "Both parties have timely exchanged Rule 26 initial

disclosures." Id. at 2.

## II.     The joint statement

### A.     Plaintiffs' position

In the current motion, Plaintiffs' counsel contends that it was not until December 2013 that

---

[1]  At the hearing, Mr. Thomson made the argument that these four depositions were no more important than any of the other witnesses given that only a Monell claim is stated.  However, despite the requirements of Fed. R. Civ. P. 4(m), Fed. R. Civ. P 15(c) and the pleading amendment deadline of July 26, 2013 set forth in the scheduling order (Doc. 27 at 3), Ms. Terterov indicated that the intention of Plaintiffs was to take the depositions of these four witnesses and then file Doe amendments to name them as defendants.  If this was the intended tactic, it is even more unbelievable that Plaintiffs would wait until the eve of the discovery cut-off to attempt to notice these depositions.

1   Defendants' counsel, Andrew Thomson, provided the names of the officers who shot at the decedent.

2   (Doc. 40 at 2)  Plaintiff's counsel, Ms. Terterov, asserts that after providing these names, Mr.

3   Thomson "evaded the scheduling of a date and refused to act in good faith in providing potential dates

4   in which the officers would be off duty."  Id.  Plaintiffs contend further that Mr. Thomson agreed to

5   set depositions near or after the discovery cut-off.  Id.

6         Plaintiffs' evidence demonstrates that on July 1, 2013, at the deposition of Plaintiffs, Ms.

7   Terterov inquired of Mr. Thomson of the names of the shooting officers but he was not able to tell her

8   the names at that time.  (Doc. 39-4 at 16)  Sometime in September 2013, she again inquired and, once

9   more on October 3, 2013 in an e-mail to Mr. Thomson.  Id.; Id. at 8.  In this e-mail, Ms. Terterov notes

10  that the initial disclosure there were "more than 15 officers" listed and indicated that if Mr. Thomson

11  did not indicate which of these officers shot at the decedent, she would issue depositions notices for

12  them all.  Id. at 8.

13        However, Ms. Terterov did not notice any depositions and sometime in December 2013, she

14  "was provided the names of all four (4) shooting officers for the first time nearly [sic] ten (10) months

15  after the filing of their answer and seven (7) months after the initial disclosures."  (Doc. 39-4 at 17)

16  Ms. Tererov indicates that she made an effort, via e-mail, to clear dates for the depositions of these

17  officers on February 18, 2014.  Id. at 10.  In this e-mail, Ms. Terterov notes that she had discussed

18  with Mr. Thomson setting the dates of the officers at some unspecified date in the past but he did not

19  provide dates.  Id.  She proposed that the depositions occur either on February 25, 26, or 27, 2014.  Id.

20  Notably, these proposed dates failed to provide ten days' notice, even assuming that the deposition

21  notices were served on the same date.  This could not have occurred, however, given the e-mail was

22  not sent until 7:08 p.m.

23        The next morning at 7:25 a.m., Mr. Thomson responded via e-mail and reported that he was

24  beginning trial on February 25 and this trial would last for two weeks.  (Doc. 39-4 at 10)  He inquired

25  whether there were other dates available.  Id.  Later than morning at 11:30 a.m., Ms. Terterov

26  proposed March 13th and 14th, 17th and 18th, 18th and 19th, 24th and 25th, 25th and 26th or 26th and 27th

27  as alternative dates.  Id. at 11.

28  ///

**B.      Defendants' position**

Mr. Thomson reports that in Defendants initial disclosures served on May 2, 2013, all officers who were at the scene of the shooting or who investigated it, were disclosed.  (Doc. 40 at 4)  Likewise, on September 23, 2013, Defendants responded to Plaintiffs' first set of production requests and provided the entire 95-page police investigation report as well as all of the attendant materials including, "all telephone logs, 911 conversation tapes regarding Rodolfo Medrano including any available transcriptions, the complete Chronology Log, the complete autopsy report regarding Rudolpho Medrano and all related attachments including toxicology reports, the radio logs and CDs thereof, the aerial helicopter video tape of portions of the incident, copies of KCSO Policies and Procedures Nos. F-100 Use of Force - General; and No. F-700 Use of Force - Deadly Force, and all audio taped copies of witness interviews of Jorge Medrano, Ronnie Medrano, Victoria Torres, Brenda Gail Collard, Robert Greene Steve Winters and Jimmy Choo to the extent that such interviews existed."  Id. at 4-5. Mr. Thomson argues the investigation report identified the shooters but, even still, Plaintiffs need not have waited for the report and could have noticed the deponents as "'Shooting Deputy 1', 'Shooting Deputy 2' etc."  (Doc. 40 at 8)

Notably, the "Incident/Investigation Report" provided by Defendants on September 23, 2013 (Doc. 40 at 18) in response to the initial production request, identifies the shooting officers throughout the document.  The first such occurrence appears on page 5.  (Doc. 42-1 at 6)  It reads, "We identified the deputies involved in the shooting as Sergeant VOTH, Senior Deputy HAKKER, and Deputies MCNEAL and WEIDENKOPF." Id.  These identities were affirmed repeatedly in the Incident/Investigation Report. Id. ("Sergeant Voth said he fired one round from his department issued duty pistol."); Id. at 7 ("Deputy MCNEAL said he fired the four rounds out of his department issued Glock 22 pistol" . . . "Senior Deputy HAKKER said he fired three rounds from his personally owned Bushmaster XM15 rifle" . . ." Deputy WEIDENKOPF said he fired one round from the shotgun at a downward angle."); Doc. 42-3 at 1 ("During the course of this investigation, Sergeant LOSTAUNAU of the Firearms Training Unit conducted a safety inspection of the firearms used by Deputies . . . The involved deputies were Sergeant B. VOTH, Senior Deputy W. HAKKER, Deputy P. MCNEAI, and Deputy J. WEIDENKOPF."); Doc. 42-4 at 3 ("Sgt. Voth-subject officer . . . Sr. Deputy Hakker-subject

4

officer . . . Deputy McNeal-subject officer . . . Deputy Weidenkopf-subject officer"); Id. at 4 ("Sgt. Gomez told us that four subject officers, Sgt Voth, Sr. Deputy Hakker, Deputy McNeal, and Deputy Weidenkopf had been involved in a shooting of a subject whom had displayed a weapon in a threatening manner."); Doc. 42-5 at 7 ("I asked Deputy WEIDENKOPF how many rounds he had fired. Deputy WEIDENKOPF said he fired one (1) round from his department issued Remington Model 870 .12 gauge shotgun."); Doc. 42-6 at 2 ("Senior Deputy HAKKER said he fired three rounds from his personally owned Bushmaster XM-l5 Rifle."); Doc. 42-10 at 5 ("Detective BRUNSELL asked Sergeant VOTH, concerning the incident on S. Union Avenue how many rounds he fired. Sergeant VOTH replied, "One."); Doc. 42-11 at 5 ("Detective BRUNSELL then asked Deputy MCNEAL if he knew how many rounds he had fired from his weapon. Deputy MCNEAL said, "Approximately four.").

Mr. Thomson reports that after having provided these materials, supplemental materials and other documents produced in response to a subsequent discovery request, Plaintiffs did not serve a deposition notice for any witness including the four shooters. (Doc. 40 at 6)  Mr. Thomson notes that in accordance with the scheduling order, Defendants have served their expert disclosures which included expert reports.  Id.   Mr. Thomson argues that if the depositions are taken now, the experts will be required to supplement their reports at a cost that would have been avoided had Plaintiffs noticed depositions in a timely fashion.  Id.

## III.   Scope of Discovery

The scope and limitations of discovery are set forth by the Federal Rules of Civil Procedure and Evidence.  Rule 26(b) provides:

> Unless otherwise limited by court order, parties may obtain discovery regarding any nonprivileged manner that is relevant to any party's claim or defense – including the existence, description, nature, custody, condition, and location of any documents or other tangible things. . . For good cause, the court may order discovery of any matter relevant to the subject matter involved in the accident. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Fed. R. Evid. 401.  Further, relevancy is interpreted "broadly to

1  encompass any matter that bears on, or that reasonably could lead to other matter that could bear

2  on any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 427 U.S. 340,

3  351 (1978).

4  **IV.     Amending the Scheduling Order**

5          As noted above, in this current motion Plaintiffs seek an order requiring witnesses to submit to

6  depositions.  They do not move to amend the scheduling order despite that the non-expert discovery

7  deadline lapsed about 40 days ago. However, in their notice of motion Plaintiffs identified some of the

8  standards for modification of the scheduling order (Doc. 39 at 6) but did not actually request that it be

9  modified in the notice of the motion and the joint statement fails to address the issue in total.

10          In any event, Districts courts must enter scheduling orders in actions to "limit the time to join

11  other parties, amend the pleadings, complete discovery, and file motions." Fed. R. Civ. P. 16(b)(3).

12  Once entered by the court, a scheduling order "controls the course of the action unless the court

13  modifies it." Fed. R. Civ. P. 16(d).  Scheduling orders are intended to alleviate case management

14  problems. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir. 1992).  As such, a

15  scheduling order is "the heart of case management." *Koplove v. Ford Motor Co.*, 795 F.2d 15, 18 (3rd

16  Cir. 1986).

17          Further, scheduling orders are "not a frivolous piece of paper, idly entered, which can be

18  cavalierly disregarded by counsel without peril." *Johnson*, 975 F.2d at 610 (*quoting Gestetner Corp. v.*

19  *Case Equip. Co.*, 108 F.R.D. 138, 141 (D. Maine 1985)).  Good cause must be shown for modification

20  of the scheduling order. Fed. R. Civ. P. 16(b)(4).  The Ninth Circuit explained:

21              Rule 16(b)'s "good cause" standard primarily considers the diligence of the party
            seeking the amendment.  The district court may modify the pretrial schedule if it cannot
22          reasonably be met despite the diligence of the party seeking the extension.  Moreover,
            carelessness is not compatible with a finding of diligence and offers no reason for a
23          grant of relief.  Although the existence of a degree of prejudice to the party opposing
            the modification might supply additional reasons to deny a motion, the focus of the
24          inquiry is upon the moving party's reasons for modification.  If that party was not
            diligent, the inquiry should end.
25

26  *Johnson*, 975 F.2d at 609 (internal quotation marks and citations omitted).  Therefore, parties must

27  "diligently attempt to adhere to the schedule throughout the course of the litigation." *Jackson v.*

28  *Laureate, Inc.*, 186 F.R.D. 605, 607 (E.D. Cal. 1999).  A party requesting modification of a scheduling

order may be required to show:

> (1) that she was diligent in assisting the Court in creating a workable Rule 16 order, (2) that her noncompliance with a Rule 16 deadline occurred or will occur, notwithstanding her efforts to comply, because of the development of matters which could not have been reasonably foreseen or anticipated at the time of the Rule 16 scheduling conference, and (3) that she was diligent in seeking amendment of the Rule 16 order, once it become apparent that she could not comply with the order.

*Id.* at 608 (internal citations omitted).

Here, as noted above, the scheduling order set forth the deadline for completing non-expert discovery that had been proposed by counsel. (Doc. 24 at 10) Thus, there can be no suggestion that this deadline was not workable for Plaintiffs or that it was imposed upon them without consideration of their discovery needs. Likewise, it cannot be said that this deadline passed without Plaintiffs completing the discovery they needed due to circumstances not reasonably anticipated. Indeed, the only explanation for the failure to take the depositions once the identity of the shooters was known was the busy trial schedule of opposing counsel. However, trial attorneys frequently have conflicting schedules which can make accommodating those schedules quite difficult. Thus, this is not an unanticipated situation. Moreover, Plaintiffs offer no explanation why they did not notice the deposition of any of these witnesses unilaterally as they were entitled to do under Fed. R. Civ. P. 30(b)(1).[2]

On the other hand, there is little explanation why Plaintiffs felt the need to await the informal identification of the shooters by opposing counsel before the deposition notices could be issued. Federal Rules of Civil Procedure Rule 30(b)(1) does not require that the deponent be named in the deposition notice for it to be enforceable. The Rule provides, "The notice must state the time and place of the deposition and, if known, the deponent's name and address. **If the name is unknown, the notice must provide a general description sufficient to identify the person or the particular class or group to which the person belongs**." Fed. R. Civ. P. 30(b)(1), emphasis added. Thus, Plaintiffs

---

[2] Plaintiffs argue that they were told that setting the depositions unilaterally would have done no good given the officers are on duty. (Doc. 39 at 6) However, there is no evidence to support this claim and, even if this was stated, the employment obligations of deponents generally are an impediment that nearly always gives way. Furthermore, had the notices been issued and the officers failed to appear, Plaintiffs would have been on a wildly better footing than they are now having failed throughout the entire discovery period to notice any of these depositions.

fail to explain why they failed to schedule these key depositions at any time after the opening of the discovery period.  Most confounding is why, despite having been given clear evidence on September 23, 2013, of the identity of the shooting officers, Plaintiffs assert in their papers that they did not learn of the identity of the shooters until December 2013.  Notably, at the hearing, Ms. Terterov admitted that the identity of the shooting officers was learned as soon as the incident report was provided.

Finally, aside from conducting written discovery which was documented by Defendants in the joint statement, Plaintiffs simply fail to discuss the extent of their discovery efforts such to allow the Court to make an evaluation of the diligence of their discovery efforts.  However, at the hearing, Ms. Terterov admitted Plaintiff conducted no other discovery and even these efforts ceased in October 2013.  Thus, in their motion, Plaintiffs focus on the asserted failures of opposing counsel.

Toward this end, Plaintiffs argue they were duped into believing that Defendants' counsel would allow depositions to occur after the court-imposed deadline.  (Doc. 40 at 3)  Exactly why they believe this[3] or why Plaintiffs believed that either party had the authority to violate the scheduling order is not addressed.  Indeed, as recited above, the scheduling order makes clear that stipulations to alter the deadlines had to be approved by the Court (Doc. 27 at 9) and, of course, the Rule makes this very clear. Fed. R. Civ. P. 16(b)(3) ("A schedule may be modified only for good cause and with the judge's consent.")

In any event, parties are required to seek an extension of time *before* the deadline has expired. Local Rule 144(d) reads,

> Counsel shall seek to obtain a necessary extension from the Court or from other counsel or parties in an action as soon as the need for an extension becomes apparent. **Requests for Court-approved extensions brought on the required filing date for the pleading or other document are looked upon with disfavor.**

Emphasis added.  Moreover, this Court has held that the failure to seek an extension as to any deadline in the scheduling order well <u>before</u> the date passes is a basis for denying the requested amendment. In

---

[3] Seemingly, Plaintiffs rely on the fact that Mr. Thomson reported that he would be in trial on the dates proposed and inquired if other dates were available for these depositions, as evidence of this point.  However, they fail to clarify why they believed Mr. Thomson was suggesting that the depositions be taken after the discovery deadline rather than in the week he was still available before his trial began.  Indeed, Plaintiffs did not inquire of earlier dates but, instead, offered dates beginning three weeks later.

8

1   Hardy v. County of El Dorado, 2008 WL 3876329 (E.D. Cal. Aug. 20, 2008), the Court held,

2   "[R]equesting the Court to modify the Scheduling Order to extend the discovery cut-off date three

3   days before the deadline does not constitute diligence."

4          Notably, in Advanced Sterilization Prods. v. Jacob, 190 F.R.D. 284, 286 (D. Mass. 2000), the

5   court determined that a motion to extend time to take depositions which exceeded the statutory limit is

6   "manifestly insufficient."  For the same reasons, the Court finds that the failure to move to extend or

7   re-open the discovery period to take depositions not previously noticed is likewise, insufficient and, on

8   this basis, the motion to compel the depositions is **DENIED**.

9   **V.     Motion to compel the depositions of the "shooters"**

10         The relief sought in the instant motion is to require the four officers who shot at the decedent to

11  submit to deposition.  Federal Rules of Civil Procedure 37(d)(1) reads, "The court where the action is

12  pending may, on motion, order sanctions if: (i) a party or a party's officer, director, or managing

13  agent--or a person designated under Rule 30(b)(6) or 31(a)(4)--fails, after being served with proper

14  notice, to appear for that person's deposition."  Of course, the Court is without authority to issue

15  sanctions here under Rule 37(d) because Plaintiffs never properly served a notice for any deponents to

16  appear.

17         On the other hand, Plaintiffs argue that the motion should be granted[4] based upon Fed. R. Civ.

18  P. 37(c)[5] which reads,

19         If a party fails to provide information or identify a witness as required by Rule 26(a) or
20         (e), the party is not allowed to use that information or witness to supply evidence on a
            motion, at a hearing, or at a trial, unless the failure was substantially justified or is
21         harmless.

22  Toward this end, Plaintiffs argue that the Rule 26 disclosure made by Defendants was "evasive and

23  incomplete" and was tantamount to a failure to disclose at all.  (Doc. 39 at 5)  Review of Defendants'

24  disclosure is difficult given Plaintiffs failed to provide a complete copy.  (Doc. 39-4)  The Court was

25  not provided with the second or third pages of the disclosure which contained at least part of the

---

[4] Inexplicably, Plaintiffs' legal arguments are not contained in the joint statement in violation of Local Rule 251(c)(3) but are contained in the notice of motion required by Local Rule 251 (a).
[5] In truth, Plaintiffs argue that Fed. R. Civ. P. 37(b)(2)(B) applies but, of course, this subpart relates to the failure of a party to produce a person for a physical or mental examination.

1    officer-witnesses anticipated by Defendants to have knowledge of the events.  Id.

2           In any event, Plaintiffs seem to complain only that the disclosure failed to identify which of the

3    officers shot at the decedent.  (Doc. 39-4 at 16)  Exactly why they believe the disclosure should have

4    made this indication is not clear.  Instead, Rule 26 requires only that the disclosing party list the

5    prospective witness and the contact information, if known "along with the subjects of that

6    information."  Fed. R. Civ. P. 26(a)(1)(A)(i).  Thus, something along the lines of "the events giving

7    rise to the shooting of the decedent" could have been sufficient for *all* of the officers on the scene

8    including those who shot at the decedent.

9           Notably, Plaintiff does not provide the portion of the disclosure as to the stated subject of the

10   information provided by Voth, Hakker, McNeal and Weidenkopf.  Even assuming the disclosure failed

11   to indicate the subject matter of the anticipated testimony, as it failed to do as to the other witnesses

12   listed, the Court cannot find that this failure was anything but harmless.  Given the production of the

13   incident report, there was no surprise to Plaintiffs as to who shot at the decedent and they had four full

14   months after the incident report was produced to take the depositions such to cure any prejudice

15   suffered as a result of the initial disclosure failing to list the subject matter of the testimony.

16   Moreover, as noted extensively above, the incident report produced to Plaintiffs in September 2013

17   explicitly and in great detail outlined the role each of the law enforcement witnesses played in the

18   events including those who shot at the decedent.  This ensures that there is no disruption to the trial

19   though Plaintiffs failure to take these depositions could.  Finally, again, other than the disclosure

20   failing to identify which of the officers shot at the decedent, Plaintiffs have failed to direct the Court to

21   any deficiency of the disclosure.  Thus, Plaintiffs have failed to demonstrate any entitlement to

22   sanctions under Fed. R. Civ. P. 37 (San Francisco Baykeeper v. West Bay Sanitary Dist., 791

23   F.Supp.2d 719, 733 (N.D.Cal.2011)) and the motion is **DENIED**.

24                                            **ORDER**

25          Based upon the foregoing, the Court **ORDERS**:

26          1.     Plaintiffs' motion to compel (Doc. 39) is **DENIED**;

27   ///

28   ///

1       2.       All parties SHALL comply with Fed. R. Civ. P. 26(e) and supplement their initial

2 disclosures as required by that Rule.

4 IT IS SO ORDERED.

5      Dated:   **April 9, 2014**            **/s/ Jennifer L. Thurston**

6                          UNITED STATES MAGISTRATE JUDGE

11